| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202<br>(303) 606-2300<br>_____<br><br>**Plaintiff:**   CeFO, INC., a Colorado corporation<br><br>v.<br><br>**Defendant:**  **NAVIGATORS SPECIALITY INSURANCE COMPANY n/k/a THE HARTFORD, a New York corporation**<br>_____<br>*Attorneys for Plaintiff:*<br>Jeremy A. Sitcoff, No. 29393<br>Kevin P. Ahearn, No. 31051<br>**LEVIN SITCOFF PC**<br>1512 Larimer Street, Suite 650<br>Denver, CO  80202<br>Phone: (303) 575-9390<br>Fax: (303) 575-9385<br>jas@levinsitcoff.com<br>kpa@levinsitcoff.com | DATE FILED: July 9, 2021 5:43 PM<br>FILING ID: BD961BEBB3383<br>CASE NUMBER: 2021CV32186<br><br><br>▲ **COURT USE ONLY** ▲<br>_____<br><br>**Case Number:**<br><br>**Division:** |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff, CeFO, Inc., by and through its attorneys, LEVIN SITCOFF PC, for its Complaint and Jury Demand against Defendant Navigators Specialty Insurance Company n/k/a The Hartford, states and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, CeFO, Inc. ("CeFO") is and was, at all times pertinent, a Colorado corporation, with its principal place of business in Englewood, Colorado.

2. Defendant Navigators Specialty Insurance Company n/k/a The Hartford ("Navigators") is a corporation existing under the laws of the State of New York with its principal place of business in Schaumburg, Illinois.  At all times pertinent, Navigators was authorized to conduct business in Colorado.

3. This Court has jurisdiction over the subject matter of this action and the parties hereto.

4. Pursuant to C.R.C.P. 98(c), venue is proper in this county, which Plaintiff designates as the place of trial of this action.

## GENERAL ALLEGATIONS

5. CeFO provides accounting, tax consulting, and financial services for businesses, executives and independent professionals.

6. In March 2007, Robert Wall hired CeFO to perform financial consulting services.

7. CeFO has continued to perform financial consulting services for Mr. Wall from March 2007 to the present.

8. At all times pertinent to CeFO's claims in this matter, Mr. Wall was engaged in the construction of a residence located at 864 Francisco Street, San Francisco, California (the "864 Francisco Project").

9. Pursuant to its contract with Mr. Wall, upon Mr. Wall's request, CeFO would perform services for Mr. Wall related to the 864 Francisco Project.

10. On March 17, 2020, Mr. Wall forwarded to CeFO employee Jennifer Ducatte an email that he had received related to the 864 Francisco Project.

11. In his email to Ms. Ducatte on March 17, 2020, Mr. Wall instructed Ms. Ducatte to send a wire to a bank in Hong Kong purportedly because of a finance audit on the payee's current bank account.

12. On March 17, 2020, Ms. Ducatte followed Mr. Wall's instructions and set up a wire from Mr. Wall's bank account to the bank account in Hong Kong (the "March 17 Wire").

13. Prior to initiating the March 17 Wire, CeFO did not question why the funds were being sent to a new and different bank in Hong Kong or investigate the request to determine if the request Mr. Wall had received was legitimate.

14. On March 23, 2020, Mr. Wall emailed Ms. Ducatte to wire a second payment from his back account to the bank account in Hong Kong related to the 864 Francisco Project (the March 23 Wire").

15. Ms. Ducatte again complied with Mr. Wall's request and set up the March 23 Wire.

2

16. Prior to initiating the March 23 Wire, CeFO did not question why the funds were being sent to a new and different bank in Hong Kong or investigate the request to determine if the request Mr. Wall had received was legitimate.

17. On or about March 25, 2020, Mr. Wall discovered that the instructions he received to send the two payments to the bank account in Hong Kong were fake, that his email had become compromised, and that he was the victim of a cybercrime.

18. Thus, when Mr. Wall sent emails to CeFO on March 17, 2020 and March 23, 2020 with instructions to initiate the March 17 Wire and the March 23 Wire, Mr. Wall was unaware that his email had been compromised and that he was a victim of a cybercrime.

19. Mr. Wall, working with his banker and the authorities, was able to recover some of the payments made to the bank account in Hong Kong.

20. However, the authorities were unable to recover funds that were sent to the bank in Hong Kong in the amount of $250,187.32.

21. Thereafter, Mr. Wall asserted a claim against CeFO.

22. In his claim against CeFO (the "Wall Claim"), Mr. Wall maintained that as his trusted financial advisor, CeFO should have realized the requests to transfer funds for payment of invoices to an alternative bank in Hong Kong were not legitimate.

23. In the Wall Claim, Mr. Wall further alleged that CeFO should have investigated all of the circumstances regarding the request to transfer funds to a different bank, in a foreign country, before authorizing that transaction for Mr. Wall.

24. In the Wall Claim, Mr. Wall asserted that had CeFO done so, it would have realized the requests to forward funds to a bank in Hong Kong were not legitimate, and the funds would not have been transferred.

25. Thus, in the Wall Claim, Mr. Wall alleged that CeFO breached the standard of care owed to him by failing to exercise appropriate diligence and judgment prior to transferring his money to a bank in foreign country.

26. In the Wall Claim, Mr. Wall contends that CeFO is liable to him for damages in the amount of $250,187.32.

27. Navigators provided professional liability errors and omissions coverage to CeFO pursuant to Policy No. CE19MPL015081IC, with a policy period of July 9, 2019 to July 9, 2020 (the "2019-2020 Policy"). The 2019-2020 Policy provides limits of liability coverage of $500,000 per occurrence.

28. On or about April 1, 2020, the Wall Claim was tendered to Navigators for a defense and coverage under the 2019-2020 Policy.

29. By letter dated May 12, 2020, Navigators denied all defense and indemnity obligations for the Wall Claim based on two exclusions in the 2019-2020 Policy.

30. Specifically, Navigators declared that the exclusion for failing to safeguard funds and the discretionary control exclusion both applied to deny defense and coverage for the Wall Claim.

31. On July 22, 2020, CeFO responded to Navigators' May 12, 2020 declination letter and informed Navigators that under Colorado's duty to defend standards, the 2019-2020 Policy afforded defense and coverage for the Wall Claim.

32. Specifically, CeFO informed Navigators that the two exclusions relied on by Navigators did not apply since there was no allegation that CeFO failed to safeguard Mr. Wall's funds or that CeFO had exercised authority or had discretionary control over Mr. Wall's funds.

33. Rather, because the Wall Claim was premised on CeFO's failure to perform adequate due diligence prior to transferring his money to a bank in a foreign country, the 2019-2020 Policy afforded coverage for the Wall Claim.

34. On August 6, 2020, Navigators issued a letter standing on its declination and refusing to provide defense and coverage to CeFO for the Wall Claim.  Navigators continued to take the incorrect and unreasonable position that the failure to safeguard funds and discretionary control exclusions precluded coverage for the Wall Claim.  Navigators also relied on a third exclusion, the improper use of client funds, to deny coverage for the Wall Claim.

35. Navigators' reliance on the improper use of client funds exclusion is also incorrect and unreasonable since CeFO did not use any of Mr. Wall's funds and since the Wall Claim was not premised on CeFO's use of Mr. Wall's funds.

36. Navigators' claim decision was decidedly incorrect and unreasonable, and even though Navigators was aware or should have been aware that potentially covered claims were alleged by Mr. Wall against CeFO in the Wall Claim, thereby triggering its duty to defend, Navigators has unreasonably refused to provide a defense to CeFO.

37. Absent a defense from Navigators, CeFO has been forced to proceed on its own with respect to the Wall Claim, which has caused damages and losses to CeFO.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

38. CeFO realleges each and every allegation contained in this Complaint as if fully set forth herein.

39. The 2019-2020 Policy constitutes a contract of insurance. CeFO is an insured for purposes of the Policy's liability coverage.

40. For the reasons discussed above, Navigators was obligated to provide defense and coverage to CeFO for the Wall Claim under the 2019-2020 Policy.

41. All conditions precedent to CeFO's entitlement to a defense and indemnity coverage under the Policy for the Wall Claim have been met or waived.

42. Navigators breached its obligations to CeFO by, among other things, wrongfully refusing and failing to provide a defense and indemnity coverage for the Wall Claim.

43. As a result of Navigators' breach of contract, CeFO suffered damages and losses in amounts to be proved at trial.

## SECOND CLAIM FOR RELIEF
**(Violation of C.R.S. § 10-3-1115 and Remedies Under § 10-3-1116)**

44. CeFO realleges each and every allegation contained in this Complaint as if fully set forth herein.

45. C.R.S. § 10-3-1115 forbids those engaged in the business of insurance from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

46. CeFO is a first-party claimant for purpose of C.R.S. § 10-3-1115.

47. Navigators denied a defense and coverage to CeFO under the 2019-2020 Policy for the Wall Claim without a reasonable basis in violation of C.R.S. § 10-3-1115.

48. C.R.S. § 10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed or denied may bring an action to recover reasonable attorney's fees and court costs, plus two times the covered benefit.

49. CeFO brings this claim to recover reasonable attorney's fees and court costs, plus two times the covered benefit, pursuant to C.R.S. § 10-3-1116.

WHEREFORE, Plaintiff CeFO, Inc. respectfully requests that judgment be entered in its favor and against Defendant Navigators Specialty Insurance Company as follows:

a. For compensatory damages in amounts to be proved at trial;

b. For two times the covered benefit, pursuant to C.R.S. § 10-3-1116(1);

c. For reasonable attorney's fees and costs of suit herein;

d. For all interest, statutory or moratory, allowed by law;

e. For such other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated this 9th day of July 2021.

Respectfully submitted,

**LEVIN SITCOFF PC**

*s/ Kevin P. Ahearn*
Jeremy A. Sitcoff
Kevin P. Ahearn
*Attorneys for Plaintiff*

Plaintiff's Address:
88 Inverness Circle East
Suite L107
Englewood, CO 80112